UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICK STORM, a/k/a RICKIE STORM,<br><br>               Plaintiff,<br><br>v.<br><br>DAVID McCLUSKY; DODDS HAYDEN; KAREN NEILL; JOSH TEWALT; RONA SIEGERT; RANDY VALLEY; RADHA SADACHARAN; KAREN BOYER; HSA JOHNSON; KASEY HOLMES; SHANNON CHAPEL; HEATHER CROSSLEY; and CENTURION MEDICAL CORPORATION,<br><br>               Defendants. | Case No. 1:23-cv-00502-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Rick Storm's Complaint as a result of Plaintiff's status as an inmate. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**1.     Pleading Standards and Screening Requirement**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal*/*Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. *Id*.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend).

## 2.     Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Center ("ISCC"). Plaintiff claims that he has been denied adequate medical treatment in prison with respect to severe pain in Plaintiff's ankle. Specifically, Plaintiff asserts that he has not been provided with adequate pain medication or with timely injections of his prescribed steroid. *Compl.*, Dkt. 3, at 9.

Plaintiff sues the following Defendants: (1) David McClusky, Dodds Hayden, and Karen Neill, who are members of the Idaho Board of Correction; (2) Josh Tewalt, Randy Valley, and Rona Siegert, who are, respectively, the Director of the IDOC, the Warden of ISCC, and the Health Services Director for the IDOC; (3) "Centurion Medical

Corporation,"[2] purportedly the private company providing medical treatment to Idaho inmates under contract with the IDOC; and (4) Radha Sadacharan, Karen Boyer, Ms. Johnson, Kasey Holmes, Shannon Chapel, and Heather Crossley, who are medical providers or medical administrators with Centurion. Plaintiff seeks damages and injunctive relief.

## 3.    Discussion

### A.    *Claim 1: Breach of Contract*

In his first claim, Plaintiff asserts that IDOC Defendants Tewalt, Siegert, McCluskey, Hayden, and Neill, as well as Centurion, have failed to abide by the contract between the IDOC and Centurion for providing inmates with adequate medical treatment. *Compl*. at 8. Plaintiff claims that he is a third-party beneficiary of that contract and, therefore, can assert a breach of contract claim under state law.[3] *Id*. The Court disagrees.

In a case involving a construction contract between a contractor and a public entity, the Idaho Supreme Court stated that, "[a]bsent a manifested intent to the contrary," such contracts "are generally not considered as being for the benefit of third persons. They are for the benefit of the state and the contractor." *Stewart v. Arrington Const. Co.,* 446 P.2d 895, 901 (Idaho 1968). The Court has found no authority from the Idaho state courts

---

[2] According to the website of the Idaho Secretary of State, the true name of this business entity appears to be "Centurion of Idaho, LLC." *See* https://sosbiz.idaho.gov/search/business (accessed May 17, 2024).

[3] Title 28 U.S.C. § 1367 provides that a district court may exercise supplemental jurisdiction over state claims when they are "so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution." In other words, the supplemental jurisdiction power extends to all state and federal claims which one would ordinarily expect to be tried in one judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Because the allegations here all involve a "common nucleus of operative fact," *id.*, the Court will exercise its supplemental jurisdiction over Plaintiff's state law claims.

suggesting that medical treatment contracts between the IDOC and a private medical provider should be treated any differently from construction contracts.

The statutes governing the IDOC do not indicate a "manifested intent" to grant third-party beneficiary rights to Idaho state prisoners. *See id*. Therefore, Plaintiff is not an intended third-party beneficiary of the contract between the IDOC and Centurion, and his breach of contract claims are implausible.

### B.  Claims 2 and 4: Violations of the Eighth Amendment

Plaintiff brings his conditions-of-confinement claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct, *Taylor*, 880 F.2d at 1045, and a defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted). A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ*., 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a private entity performing a government function, such as Centurion, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom

amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment and guarantees prisoners the right to minimally adequate conditions of confinement. To state a claim under the Eighth Amendment, prisoners must

plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm,

*McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment,

a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Accordingly, prison medical providers do not act with deliberate indifference solely by disagreeing with an outside doctor's treatment recommendation or by choosing a different treatment than that requested by an inmate. However, if the prison provider's chosen treatment proves ineffective, a continued refusal to try other treatments may constitute deliberate indifference.

In *Snow v. McDaniel*, for example, the Ninth Circuit held that a genuine factual issue existed as to whether providers violated the Eighth Amendment by denying double hip replacement surgery to an inmate whose hips had degenerated so badly that he could

not walk and who was in constant, severe pain. 681 F.3d at 988. Evidence suggested that providers had "ignored outside expert advice, relying solely on their own medical judgment for three years before eventually approving surgery." *Id*. This was sufficient to raise an inference of deliberate indifference even though a "medication-only course of treatment may have been medically acceptable for a certain period of time." *Id*. At some point, ignoring a "long term" recommendation of an outside provider may become "medically unacceptable." *Id*.

A court's review of a prison medical provider's choice of treatment must be especially deferential where the issue is the type or amount of pain medication an inmate should receive. In such cases, the court "is asked to pass judgment on the attempts by prison medical staff to navigate between" the risk of "debilitating pain" and the competing risk of addiction. *Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015) (unpublished). Where a prison medical provider believes in good faith that a certain course of pain treatment might "create or enable" a risk of addiction, the provider's decision not to provide that treatment "cannot be considered an act of deliberate indifference." *Id*. The Constitution "does not impose a constitutional obligation upon prison officials" or prison medical providers "to enable a prisoner's substance abuse or addiction problem." *Id*. at 518.

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

*McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Plaintiff's Complaint, liberally construed, appears to state colorable Eighth Amendment medical treatment claims against Defendants Sadacharan, Boyer, Holmes, Crossley, and Siegert. These Defendants are all described as either (1) personally participating in Plaintiff's medical treatment, (2) having been made aware of the allegedly inadequate treatment, failing to act to remedy the situation, or (3) deciding to reject a medical specialist's treatment plan. *See Taylor*, 880 F.2d at 1045; *Starr*, 652 F.3d at 1207.

The Complaint also states a plausible Eighth Amendment claim against Centurion. The allegations that Plaintiff has consistently sought adequate and timely medical treatment, yet consistently has been denied such treatment, support a reasonable inference that Centurion has a policy, practice, or custom amounting to deliberate indifference. *See Mabe*, 237 F.3d at 1110–11.

In addition, the Complaint states plausible Eighth Amendment claims for injunctive relief against IDOC Defendants Tewalt and Valley, who appear to be ultimately responsible for ensuring that inmates at ISCC receive adequate medical care. However, because neither of these Defendants is alleged to have personally participated in Plaintiff medical treatment, or to have known of and failed to remedy the alleged constitutional violations, Plaintiff may not proceed on his claims for monetary damages against these Defendants.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

Finally, the Complaint does not state plausible § 1983 claims against Defendants McCluskey, Hayden, Neill, Johnson, or Chapel. These Defendants are not alleged to have participated in Plaintiff's treatment. Nor does the Complaint assert that these Defendants were aware of the alleged constitutional violations yet failed to act to prevent or remedy those violations.

### C.   *Claim 3: Negligence*

Plaintiff's final cause of action asserts state law claims of negligence. "In a negligence action the plaintiff must establish the following elements: '(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage.'" *Jones v. Starnes*, 245 P.3d 1009, 1012 (Idaho 2011) (quoting *Hansen v. City of Pocatello*, 184 P.3d 206, 208 (Idaho 2008)). A person breaches a duty, and thus commits negligence, when that person acts in a manner in which a reasonable person would not. *See Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 172 P.3d 1123, 1128–29 and n.3 (Idaho 2007) (describing the reasonable person standard as the "negligence standard of care").

Additionally, to succeed on a medical negligence (or malpractice) claim, the plaintiff must "affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence" that the defendant medical provider "negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided." Idaho Code § 6-1012. A plaintiff asserting a medical malpractice claim also must first submit the claim to a prelitigation screening panel

in accordance with Idaho Code § 6-1001.

The Complaint states plausible negligence or medical malpractice claims against Defendants Tewalt, Valley, Siegert, Sadacharan, Boyer, Holmes, Crossley, and Centurion. Plaintiff's negligence claims against Defendants Johnson and Chapel are implausible because the Complaint contains no specific allegations against these Defendants.

### 4.    Request for Appointment of Counsel

Plaintiff also seeks appointment of counsel. *See* Dkt. 4. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id.* To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id.*

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex.

Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

**5.     Conclusion**

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that some are plausible, meaning that the claims will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if

the facts and law support such a motion.[4] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## ORDER

**IT IS ORDERED:**

1.    Plaintiff's Motion for Appointment of Counsel (Dkt. 4) is DENIED.

2.    Plaintiff may proceed on the following claims: (1) Eighth Amendment claims against Defendants Siegert, Centurion, Sadacharan, Boyer, Holmes, and Crossley (for damages and injunctive relief), as well as Defendants Tewalt and Valley (for injunctive relief only); (2) negligence or medical malpractice claims against Defendants Tewalt, Valley, Siegert, Sadacharan, Boyer, Holmes, Crossley, and Centurion.

3.    All other claims against all other Defendants are DISMISSED, and David McClusky, Dodds Hayden, Karen Neill, Ms. Johnson, and Shannon Chapel are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to

---

[4] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under § 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915A and may be filed only in extraordinary circumstances.

amend the complaint to assert such claims.[5]

4.      Defendants will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

a.      **Karin Magnelli**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of the IDOC Defendants.

b.      **Aynsley Harrow Mull**, Associate General Counsel for Centurion, at Ms. Mull's email address on file with the Court, on behalf of the Centurion Defendants.

5.      Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former

---

[5] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

6.    If Plaintiff receives a notice indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice without further notice.

7.    Unless otherwise ordered, the parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

8.    Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

9.    Dispositive motions must be filed by the later of (a) 300 days after entry of this Order or (b) 300 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

10.   Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner

of service, date of service, address of service, and name of person upon whom service was made.

11.    The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

12.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

13.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

14.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

15.     Pursuant to General Order 324, this action is hereby RETURNED to the

Clerk of Court for random civil case assignment to a presiding judge, on the

proportionate basis previously determined by the District Judges, having

given due consideration to the existing caseload.

DATED: July 9, 2024

David C. Nye
Chief U.S. District Court Judge